# Richmond.

## YUILLE'S ADM'R v. WIMBISH'S ADM'R.

### March 22d, 1883.

1. CONSTITUTION—*Obligation of contracts.*—Code 1873, chapter 141, providing that, "§ 14. A creditor may compound or compromise with any joint contractor or co-obligor, and release him from all liability on his contract or obligation, without impairing the contract or obligation as to the other joint contractors or co-obligors"; and that, "§ 15. When said compounding or compromise is made, the contract or obligation shall be credited with full share of the party released, except where the compounding or compromise is with a surety, or co-surety, and in that case, as between the creditor and principal, the credit shall be for the sum actually paid by the compounding debtor"; and that, "§ 16. Nothing herein contained shall affect or impair the right of contributions between joint contractors and co-obligors," does not impair the obligation of contracts existing at the date of its passage (April 25th, 1867), and is not unconstitutional as to such contracts.

2. SURETIES—*Reasonable time—Due diligence—Case at bar.*—In 1852 W. held bond of F., principal, and S. V. and P., sureties. March 14th, 1868, (under Code of 1873, chapter 143, sections four and five), Y.'s administrator, H., by notice in writing, required W. to sue on the bond. W. sued May 14th, 1868, all the obligors except Y. F. and S. accepted service of writ. As to them, by consent, the suit was that day placed on the office judgment docket and they pleaded. Of this H. was informed, and also that the proper credits would be given and acquiesced, and suffered in September, 1868, in his county judgment to go on the bond against him by default. Against F. and S., in October, 1868, in their county, judgment went, and executions were issued, but were restrained by the extention of the stay law through 1869 by the military commandant. In February, 1868, P. had under the act of April 25th, 1867, compromised with W. in full of one-third of the bond, which was endorsed thereon. Suit, however, was brought against him in August, 1868. At September rules, 1868, he plead his release, and the suit was dismissed. S., May 13th, 1868, conveyed all his property to secure ratably all his debts.

Another execution was issued against F. October, 1870, and returned "No effects." In August, 1871, an execution was issued against H. as administrator of Y., who got an injunction. It was dissolved in 1880, and a decree entered for the amount due on the judgment. On appeal to this court;

HELD:

1. The act of assembly (Code 1873, chapter 141, section fourteen,) under which P. compromised his liability on the bond and was released, was not unconstitutional as to that bond.

2. But by the very terms of that act (section sixteen) such release of P. cannot affect or impair the right of any other surety who may have been required to pay more of that bond than was so released to call on P. for contribution.

3. The circumstances do not show that the suit was not instituted within a reasonable time after the requisition, nor that it was not prosecuted with due diligence to judgment and by execution, nor that Y.'s administrator is entitled to the aid of equity to enable him to avail himself of defences (if any) which he might have made, but did not make at law.

4. The property conveyed in trust by S. is also liable, under the terms of the deed, to contribution to his co-sureties on the bond.

Appeal from decree of circuit court of Charlotte county, rendered March 29th, 1880, in a suit styled *Yuille's administrator* v. *Gaulding, sheriff, &c.*

By that decree, W. W. Henry, administrator of Alexander Yuille, deceased, was required to pay *de bonis testatoris* in his hands to be administered, William R. Barksdale, assignee of E. Y. Wimbish's administrator, the sum of twelve hundred and fifty-three dollars and twenty-three cents, with interest on nine hundred and eighty-seven dollars and seventy-three cents from September 20th, 1877, until paid, that appearing to be the amount due on the judgment against said administrator on a bond of Thomas S. Flournoy, principal, and W. L. Pannill, J. B. Stovall, and Alexander Yuille, sureties, to Eppa Y. Wimbish, dated January 28th, 1852, for $5,000, payable with interest twelve months after date, after deducting all credits for payments made thereon. From this decree, the said Henry, as such administrator, obtained from one of the judges of this court an

appeal and *supersedeas.* The facts of the case and the positions taken by the appellant, are fully stated in the opinion of the court.

*W. W. Henry, James Lyons, Jr., F. D. Irving, Carrington & Fitzhugh,* for the appellant.

*Wood Bouldin, Jr.,* and *Guy & Gilliam,* for the appellee.

FAUNTLEROY, J., delivered the opinion of the court.

On the 20th of January, 1852, Thomas S. Flournoy, *as principal,* and J. B. Stovall, Alexander Yuille, and William L. Pannill, *as sureties,* executed a joint bond to Eppa Y. Wimbish for $5,000, payable twelve months after date, with legal interest from date.

On the 14th March, 1868, William W. Henry, as administrator of Alexander Yuille, deceased, acting under section four, chapter 143 of the Code of Virginia, 1873, caused a notice to be served on William Wimbish, administrator of Eppa Y. Wimbish, deceased, requiring him to institute suit forthwith on the said bond against the obligors therein. The said William Wimbish, administrator of the said Eppa Y. Wimbish, directed his counsel to sue on the said bond, which, however, was not done until the fourteenth day of May, 1868, during the spring term of the circuit court of Halifax county, when suit was reguarly instituted against all the obligors in the said bond, except Alexander Yuille, who was dead.

Service of the writ was acknowledged by Thomas S. Flournoy and J. B. Stovall, and the suit was put on the office-judgment docket, as to them, by consent, on the fourteenth day of May, 1868, and on that same day they filed their pleas of payment. During the term, the said W. W. Henry, administrator of Alexander Yuille, deceased, was informed, by the counsel for the said William Wimbish, administrator of the said Eppa Y.

Wimbish, that the said suit had been placed on the office-judgment docket as to the said T. S. Flournoy and J. B. Stovall, as he had been previously advised would be done; in which arrangement the said W. W. Henry seems, by the record, to have acquiesced.

*Judgment* was not rendered in the said suit until the October term, 1868, and the record does not show what orders, if any, were made in it at the May term. A writ was sued out against William L. Pannill August 6th, 1868, and served on him, in the county of Pittsylvania, August 17th, 1868; to which he, the said Pannill, at the September rules, 1868, responded by the pleas of payment and release; and at the October term, 1868, the suit was dismissed as to Pannill, and judgment was rendered against T. S. Flournoy and J. B. Stovall for $5,000, with interest from January 20th, 1852. The said Flournoy and Stovall having waived their pleas, the plaintiff sued out executions on this judgment, and placed them in the hands of the sheriff, who returned them endorsed, "*not levied,* by order of General Canby. J. M. Carrington, d. s., for A. J. Dodamead, sheriff."

The *stay law,* which was then in operation, forbidding the levy of an execution, was extended throughout the year 1869, by the orders of Generals Canby and Stoneman, then dominating Virginia, as "*Military District No.* 1." See sheriff's return on the executions (record, page 21) and *Harrison's ex'ors* v. *Price's ex'ors,* 25 Grat. 553.

On the 26th day of February, 1868, William L. Pannill, one of the sureties on the said bond, paid to the attorney for William Wimbish, administrator as aforesaid of the said Eppa Y. Wimbish, the obligee in the said bond, the sum of $1,796.19, in full of *one-third* of the principal and interest then due on the said bond, which payment was made under the provisions of the act of the general assembly of Virginia 1866–7, Code of 1873, page 988–9, and the said payment was endorsed upon the said bond.

At the September term, 1868, of the circuit court of Charlotte county, (the residence of the said W. W. Henry, administrator of the said Alexander Yuille, deceased, one of the co-sureties upon the said bond,) a suit was matured against him on the said bond; and the said Henry having enquired of the counsel for the plaintiff, Wimbish, whether the suit had been docketed in Halifax, as he had been told it would be, and being told by the said counsel that it had been so docketed, and knowing of no defence, permitted a judgment to go against him by default.

On the 13th day of May, 1868, the said J. B. Stovall executed a deed of trust, by which he conveyed all his property, real and personal, for the benefit of all his creditors *pro rata*, and without discrimination, which said deed of trust was duly recorded in Halifax county May 15th, 1868.

An execution sued out on the judgment against Flournoy, 17th October, 1870, was returned by the sheriff of Halifax county, endorsed "*No effects.*"

In August, 1871, an execution was issued on the judgment against the said W. W. Henry, administrator of Alexander Yuille, deceased, directed to the sheriff of Charlotte county, which said execution was enjoined by the circuit court of Charlotte county in vacation, according to the prayer of the bill filed by the said W. W. Henry in this case.

At the March term, 1880, of the circuit court of Charlotte county, the said injunction was dissolved, and a final decree was rendered, by which it was adjudged that the said W. W. Henry, administrator of Alexander Yuille, deceased, out of the assets of his intestate should pay the sum of $1,253.23, with interest on $987.73, from the 20th of September, 1877, which the decree fixed as the true amount due on the judgment against the said administrator of Alexander Yuille, deceased, after having duly credited the several payments which had been made from time to time by Flournoy, the principal debtor. These

are the essential facts disclosed by the record of the case in the circuit court of Charlotte county, whose proceedings this court is asked to review.

It is insisted by the appellant that the decree against the estate of Alexander Yuille, one of the coöbligors in the bond to Wimbish is erroneous, because of the alleged failure of the appellee, Wimbish's administrator, to use due diligence after the service of the notice to sue on the bond given by W. W. Henry, administrator of Yuille, March 14th, 1868; and also because of the reception by the administrator of Wimbish of the payment made by Pannill, one of the co-sureties, February 26th, 1868, and the qualified release thereupon given to the said Pannill.

We think that the putting of the suit on the office-judgment docket of the May term, 1868, of the circuit court of Halifax, as to Flournoy and Stovall, was a substantial compliance with the requirement of the notice to sue, and of the law under which said notice was given—sections four and five, chapter 143, page 993, Code of Virginia, 1873—and that the delay which followed in obtaining judgment was due to no action of the plaintiff, but was the result of the pleas to the action which were put in by the said Flournoy and Stovall, which they undeniably had the right to put in, and which the plaintiff in the action could not by any possibility prevent. It does not appear what order was made in the suit after the pleas were filed, and whether the suit was reached or not on the call of the docket the record wholly fails to show. At the next term, October, 1868, the judgment was obtained, and executions were issued immediately, returnable to January and November rules, 1869, which executions the sheriff refused to levy, because of the stay law and the military domination, which both forbid the levy.

As to the payment made by Pannill, one of the co-sureties, of one-third of the amount of principal and interest then due, and endorsed upon the bond February 26th, 1868, it was so transacted according to the act of assembly 1866–7, Code of Virginia,

1873, chapter 141, page 988-9, for such case made and pro-
vided, and which statute carefully preserves the rights of all
parties, provides against the increase of anyone's burden, and
strictly guards all the equities between co-obligors as well as be-
tween contracting parties.

As to the objection that the said statute impairs the obliga-
tion of *existing* contracts, and is, therefore, as to them, uncon-
stitutional, we do not think that it is liable to such objection.
It preserves all rights, and only provides an express, direct and
ready mode of doing, by and between joint contractors, what it
was not unlawful to do before the statute was enacted, and which
was done by roundabout and difficult indirection. It only re-
moved technical difficulties out of the way of compromise and
settlement.

An English statute, cited in *Dewolf* v. *Lindsell*, L. R. 5 Eq.
Ca. 209, bears close resemblance to our Virginia statute in its
purpose and effect, and the courts expressly held, that it *did*
apply to *existing* contracts.

The record shows that the appellant, W. W. Henry, adminis-
trator of Yuille, one of the co-sureties, made formal requirement
upon Wimbish's administrator to sue on the bond in the circuit
court of Halifax, to the May term, 1868, and when he was in-
formed by Wimbish's attorney, while in attendance upon said
court, that an arrangement had been made by which the suit
would be put on the docket during the term, and the failure to
sue out the writ would work no delay, he left the court, appar-
ently satisfied with the docketing of the suit, and Mr. Henry
says, in his bill, referring to a conversation at the Charlotte
court, September, 1868, "it is not charged that said attorney
intended to make your complainant believe that there was a
judgment for your complainant," and he permitted a suit against
him, on the docket, at that court, to go to judgment by default,
on being, a second time, informed by Wimbish's attorney "that
the suit in Halifax against Flournoy and Stovall had been placed
on the docket at the May term, 1868, of the Halifax circuit

court preceding; and being also assured, by said attorney, that the proper credits would be given."

Mr. Henry, the appellant, a lawyer of experience and ability, and then a regular practitioner of the circuit courts of Halifax and Charlotte counties, allowed the judgment to go against him by default in the circuit court of Charlotte, and he does not aver in his bill, that he could not, by proper diligence, have informed himself of all the defences to the action at law, now urged against the judgment. See *Slack* v. *Wood*, 9 Grat. 40; *St. John's ex'ors* v. *Alderson*, 32 Grat. 143, and cases there cited.

Applying the principles settled by this court, to the facts of the case under consideration, it is now too late for Yuille's administrator to ask the aid of a court of equity to avail himself of legal defences lost by his own laches.

On 26th February, 1868, Pannill paid one-third of the principal and interest then due on the bond, amounting to $1,796.19; and it appears by the record that Flournoy, the principal debtor, made thereafter sundry payments, which, being credited by the court below on the joint obligation, left the sum of $1,253.23 as of September 20th, 1877, to be paid by Yuille's estate; so, that if Pannill had not settled, Yuille's share of the joint debt would now be $2,274.81, with interest from September 20th, 1877. And thus it is manifest that so far from having been injured by Pannill's lawful act of paying his supposed liability on the joint obligation, Yuille's estate is now called on to pay his share of a common and equal burden, less by $1,021.58 than Pannill paid. Pannill is dead; and though it appears by the record that the suit was revived and ordered to proceed against his administrator, yet he was not served with process, and no case was made against him by the bill, and no decree could have been against him.

J. B. Stovall, one of the co-sureties in the bond to Wimbish, appears, by the record of the proceedings in the court below, to have been wholly lost sight of since the execution of the deed of trust May 13th, 1868; but that trust embraced a large and

valuable property, real and personal, and is, we think, amenable to a claim for contribution to his co-sureties in the bond to Wimbish.

The decree of the circuit court of Charlotte county, complained of in this appeal, *is affirmed ;* but without prejudice to the rights of any of the co-sureties who may have paid more than their just proportion of the debt.

DECREE AFFIRMED.